## Galloway v. Patterson.

March 21, 1950.

Rehearing denied June 9, 1950.

M. L. Blackwell, Judge.

Pentecost & Dorsey for appellant.

King & Flournoy for appellee.

JUDGE KNIGHT—Affirming.

Appellant prosecutes this appeal from a judgment of $8763.25 in favor of appellee resulting from the death of his son, Donald M. Patterson, when the bicycle he was riding collided with a truck owned by appellant and driven by his employee, Joe Schwartz. The accident occurred on August 31, 1945, at about 5:00 p. m. on a clear summer day. Young Patterson, 17 years of age and a normal boy physically and mentally, was riding a bicycle in the residential section of the town of Corydon. The main street on which he was riding is also part of U. S. Highway No. 60, and is 30 feet wide at this point, consisting of 18 feet of concrete pavement in the center with a 6 foot gravel shoulder on each side. Patterson was traveling south on the east side of the road, that is, on his own left side. Appellant's evidence is that his bicycle was on the pavement about two feet from the eastern edge, while evidence for the appellee places his bicycle on the shoulder some two or three feet east of the pavement. Appellant's truck was traveling north on the east side of the road, that is, on his right side. The evidence is conflicting as to the speed at which the

truck was moving, appellee's witnesses placing it at 30 to 40 miles per hour, which would be in violation of KRS 189.390(1) (b), and appellant's witnesses placing it at 15 to 25 miles per hour. As the driver of the truck approached from the south he saw the boy on the bicycle approaching him from the north about two blocks away. The boy had his head turned to the left apparently looking at or talking to someone on the sidewalk. Appellee's witnesses say they did not hear the driver sound his horn, but his evidence is that he did so more than once as he approached the boy. He took his foot off the accelerator, thus slowing down the truck, although he did not apply his brakes or bring the truck to a stop. The collision occurred about 30 feet south of the intersection of 5th street. The bicycle did not collide with the front end of the truck, but struck the truck near the rear wheel. The only mark left on the truck was the imprint of the bicycle tire tread on the right rear wheel of the truck. The truck was not damaged and neither was the bicycle and, according to the testimony of the driver of the truck, he was first conscious of the accident when he heard the thud as the bicycle struck the rear wheel. He looked back over his truck and saw the boy lying on the shoulder of the road and stopped his truck within 30 feet. Appellee's evidence indicates that the truck went on about 110 feet before stopping. The boy's body was lying on the shoulder, his head near the pavement, his skull was fractured and he died shortly after being taken to the Henderson hospital. There was some evidence produced by appellee that a drunken soldier was seen riding a bicycle going north on the west lane of the paved roadway, that he was zigzagging back and forth close to the truck, and that the driver of the truck, in an effort to avoid hitting that bicycle rider, swerved to his right onto the shoulder and it was because of this swerving that the bicycle of the deceased was brought into collision with the rear wheel of the truck. This testimony was contradicted by all the evidence of appellant which was to the effect that the truck passed the drunken soldier on the bicycle some distance south of the collision and he was not near the scene of the accident when it happened and the truck did not swerve off the pavement to avoid hitting him. We do not give much weight to appellee's theory that swerving to avoid hitting the drunken soldier on the bicycle was a factor in the case.

As we see it, the facts in this case, and especially the evidence for the appellant, bring into application the last clear chance doctrine and we think the failure of the driver to follow that principle in this case was the real negligence attributable to appellant. There can be no doubt under the evidence but that the Patterson boy was himself guilty of contributory negligence in that he was riding a bicycle on the wrong side of the street and was not maintaining a lookout for on-coming traffic but instead had his head turned to the left looking toward the sidewalk instead of straight ahead as he should have been. And yet this very fact, observed and testified to by appellant's witnesses together with the fact that the boy was on the pavement as testified to by all of appellant's witnesses, must have made his peril so imminent that it became the duty of the driver of the truck to apply his brakes and bring his truck to a stop and to do everything in his power to avoid injury to the boy who clearly was not observing proper precautions for his own safety.

The "last clear chance" doctrine is a humanitarian one, based on the principle that no one may negligently injure another, even though the other is at fault, if the former has an opportunity to avoid the injury after becoming aware of the other's perilous predicament. It is a doctrine of *discovered* peril. In applying this rule we have consistently recognized that the defendant must, as a matter of fact, have the last clear chance. It is not a speculative chance or a possible chance. In each case there must be proven facts which justify the conclusion that the plaintiff's peril should have been discovered. Such peril must be reasonably obvious. See Swift & Co. v. Thompson's Adm'r, 308 Ky. 529, 214 S. W. 2d 758, and cases therein cited in which the doctrine is fully discussed.

Under the facts in this case, as outlined above, we think the peril of the on-coming boy with his head turned, oblivious to approaching traffic, almost immediately in front of the driver and on the pavement, was obvious to the driver of the truck and presented a situation which made it incumbent upon him to take such precautions as were necessary to avoid possible injury to the boy and not to rely upon the hope or belief that the boy would discover his peril and himself get out of the way.

We have many times written that when the last clear chance rule makes its entry on the stage, all antecedent negligence of either party retires from the case and the only question left is whether or not the defendant exercised ordinary care with the means at hand to prevent the injury. Hewitt's Adm'r v. Central Truckaway System, 302 Ky. 459, 194 S. W. 2d 999, and cases therein cited.

For the reasons above outlined, we do not think the lower court erred in including in instruction No. II the duties of the driver under the last clear chance doctrine, one of the grounds of reversal urged by appellant. Nor was it error to incorporate into instruction No. I the issue of the speed at which the truck was traveling. It is appellant's contention that since the truck did not hit the bicycle but was hit by the bicycle, the speed of the truck was not the proximate cause of the accident which was one that could have occurred regardless of the speed of the truck. Ordinarily that would be true but we think the speed of the truck becomes relevant here in view of its bearing on the application of the last clear chance doctrine and the discovered peril of the boy, since to avoid that peril required the bringing of the truck under complete control and complete stoppage if necessary to avoid a collision.

Instruction No. IV, which set out the rights of the driver as he met on-coming traffic in the adjacent lane on his left, is complained of by appellant because reference was made to any such traffic "which suddenly and unexpectedly" confronted him. The words "suddenly and unexpectedly" were unnecessary limitations to his rights under the law as laid down in the instruction, but we think it was not prejudicial and was not misleading to the jury. With the exception of these words, the instruction was otherwise very favorable to appellant.

For the reasons herein indicated, we think the judgment should be and it is affirmed.