Robert L. ISON, Appellant,

v.

Okie MULLINS, Administrator of the Estate of Clive Mullins, Deceased, Appellee.

Court of Appeals of Kentucky.

June 17, 1960.

J. K. Wells, Paintsville, for appellant.

B. E. Mullins, Paintsville, Robert L. Milby, London, for appellee.

MONTGOMERY, Chief Justice.

Clive Mullins sued Robert L. Ison and his mother, Loretta Ison, for damages to his car and his person resulting from an auto collision. Mullins died from a cause unrelated to his injuries, and the action was revived in the name of his administrator, the appellee. By counterclaim, Robert L. Ison sought recovery for damages to his car. The administrator recovered judgment against Robert L. Ison for $1,200. Ison has moved for an appeal. The disposition of the case as to Loretta Ison is not clear.

The collision occurred on August 17, 1957, at about ten o'clock in the morning on Kentucky Highway 469. The road was relatively straight, with a gravel surface about 22 feet in width. Mullins had just rounded a curve about 145 feet from the place of collision and was eastbound. Ison was westbound.

The pivotal issue was the relative positions of the two vehicles on the highway. Ison contends that testimony and physical facts show, indisputably, that his car was on its proper side of the road and that Mullins' car came around the curve sideways and slid into appellant's car. It is the theory of appellee that appellant's car struck Mullins' car while traveling at least in part on Mullins' side of the road.

The only witness for the appellee as to how the collision occurred was Dixie Keaton, who said she was sitting on her porch. Dixie said that the Mullins car was traveling on its proper side of the road and that the Ison car was partly on its proper side and partly on Mullins' side of the road. She said that the vehicles collided and came to rest about two feet apart. In fixing the rate of speed of the two cars, Dixie said that Mullins was traveling about 15 to 20 miles per hour and Ison about 60 to 65 miles per hour, "going pretty fast." On cross-examination, Dixie admitted that she had never driven a motor vehicle but had ridden in cars "A right smart little dab." She admitted that in estimating the speed she "was just guessing," which was "her best judgment" on the matter. The witness was confused as to which parts of the cars came into contact, saying first that the two left front sides hit, then saying, "No, it might be the right side of one of them." She did not clarify these statements.

Appellee testified that the Ison car "was damaged from about the center of the grill on the left, in the center left headlight, and on to the front door, on the left side, was all damaged," and that the Mullins car "was hit in about the center of the grill, on the right side, at an angle, in about a ten degree angle, that way; to the right." Other testimony for the appellee dealt with distances, road condition, extent of injuries, etc. Appellee's case rests on the testimony of Dixie Keaton.

Ison testified that he was driving about 40 to 45 miles per hour as Mullins' car came around a curve traveling about 40 to 50 miles per hour. He said that Mullins' car was skidding sideways and was partly on his (Ison's) side of the road. Ison said that he applied his brakes and that his car had slowed to 20 miles per hour at the time of the collision. He had turned the car toward the ditch on his side of the road, but the right front side of the Mullins car collided with the left front and side of the Ison car. When the vehicles came to rest, the Ison car "was ready to drop over the ditch line" and the Mullins car "was sitting almost at a right angle." There was room for traffic to pass on the Mullins side of the road.

Three disinterested witnesses, including a deputy sheriff who investigated the accident, substantiated appellant's statement concerning the positions of the cars in the road and the parts of the cars damaged. Two of these witnesses testified to the marks made by the cars in the road. The testimony of one of these witnesses summarizes their evidence as follows:

"A. Now, the marks was about eight to ten feet from where it hit him. He was on his side. It looked like his (Mullins) car just were past the middle of the road. Bob went plumb over in the weeds on his side, and he (Mullins) come over, and just kindly hit him (Ison) in the side.

"Q. Did you see any marks made by Bob Ison's car? A. Yes, I seen where he had come up the road, looked like he used his brakes, but the other guy didn't look like he had ever used his brakes.

"Q. Were the marks made by Bob Ison over on his side of the road? A. Yes."

The testimony of appellant's mother-in-law and another witness indicated that Dixie Keaton's view from her porch may have been obscured. There was other testimony that the elevation and curvature of the road would have prevented her from seeing the center of the road. There was no center line marked in the gravel surface.

Immediately following the collision, Ison sought to extinguish a fire in his car, and Mullins sought to extricate himself from his car. His right knee was pinned between the steering wheel and the dash. The court excluded appellant's statement as to what Mullins said when he first got out of the car. By avowal, it was shown that appellant would testify that he said to Mullins, " 'You must have been flying,' or something of that nature," and that Mullins replied, " 'Something went wrong with my car, and I couldn't control it.' "

It is conceded that this testimony does not come within the interdiction of KRS 421.210. Appellant argues that it is admissible as a part of the res gestae and as an admission against interest. · Appellee urges that the statement was made too late to be a part of the res gestae and that the statement is self-serving instead of against interest. His theory is that if something was wrong with the car Mullins was not guilty of negligence, relying on Cox v. Wilson, Ky., 267 S.W.2d 83, 44 A.L.R.2d 830.

The latter contention is as erroneous as it is ingenious. The fallacy in the argument is that if the defect was known or could have been known to Mullins by use of ordinary care, then the existence of the defect at the time of the accident would have been no excuse. Humphries v. Gray, 305 Ky. 206, 203 S.W.2d 8. There was no evidence of any defect; thus, the argument fails and the statement becomes one against interest since it is an admission by Mullins that the car he was driving was out of control. As such, it should have been admitted. Quin v. Quin, Ky., 259 S.W.2d 23.

The statement also was admissible as a part of the res gestae. It was made when Mullins first got out of the car following his extrication and the extinguishment of the fire in Ison's car. It was a spontaneous declaration intimately connected with the collision and near enough in point of time to exclude the presumption that it was the result of premeditation or design. The character of the statement indicates its spontaneity. Henry Vogt Machine Co. v. Chamberlain, Ky., 279 S.W.2d 224; Kinsella v. Meyer's Adm'r, 267 Ky. 508, 102 S.W.2d 974; Provident Life & Accident Insurance Co. v. Diehlman, 259 Ky. 320, 82 S.W.2d 350. See also Joseph Denunzio Fruit Co. v. Louisville & N. R. Co., 276 Ky. 168, 123 S.W.2d 813. The statement contained in the avowal should have been admitted.

Ordinarily, the credibility of witnesses is for the jury. However, when admitted physical facts and testimony are so diametrically opposed as to make verbal testimony unbelievable, a jury verdict based on such testimony will be set aside. An extreme example is presented in Louisville & N. R. Co. v. Chambers, 165 Ky. 703, 178 S.W. 1041, Ann.Cas.1917B, 471. The application of this rule to automobile accident cases is well stated in Silver Fleet Motor Express v. Wilson, 291 Ky. 509, 165 S.W.2d 48. See also C. L. & L. Motor Express Co. v. Achenbach, 259 Ky. 228, 82 S.W.2d 335. The rule has been approved recently. Hoover Motor Express Co. v. Edwards, Ky., 277 S.W.2d 475; Williams v. Kirtley, Ky., 263 S.W.2d 119.

Excluding the unclear statement of Dixie Keaton, all the witnesses, including appellee, testified that the right front of the Mullins car and the left front and side of the Ison car were damaged, thus establishing conclusively which parts of the car came into contact in the collision. Counsel for appellee argue that if appellant had been driving on his (Ison's) left side of the road and had turned sharply to the right the cars would have been damaged in the same places. The undenied testimony as to the relative positions of the cars on the road after the collision and the tracks in the road establish that appellant's car was on its proper side of the road and that the Mullins car was on the wrong side. These physical facts and other corroborative testimony in behalf of appellant, together with Mullins' statement made at the scene of the collision, when considered against the uncertain testimony of Dixie Keaton as to the speed and positions of the cars in the road, destroy the evidentiary value of her testimony. J. C. Wells Bus Co. v. Kennard, 288 Ky. 507, 156 S.W.2d 873; Central Lumber Co. v. Sparks' Adm'r, Ky., 296 S.W.2d 453; Couch v. Hensley, Ky., 305 S.W.2d 765. In such case, a verdict based on testimony of this character will be deemed flagrantly against the evidence. Appellant's motion for a judgment notwithstanding the verdict should have been sustained. See Note, 58 Columbia Law Review 517.

In Dixie Ohio Express Co. v. Vickery, 306 Ky. 171, 206 S.W.2d 821, relied on by appellee, the evidence as to the physical facts was held insufficient to establish conclusively the cause of the collision.

The motion for appeal is sustained and the judgment is reversed with direction to enter judgment for the appellant.